**ARTCO–BELL CORPORATION and Herby's Foods, Inc.**

v.

**The TEXSTAR CORPORATION.**

No. 18183.

Court of Civil Appeals of Texas, Fort Worth.

Dec. 13, 1979.

Rehearing Denied Jan. 10, 1980.

Stubbeman, McRae, Sealy, Laughlin & Browder, Midland, Shannon, Gracey, Ratliff & Miller, Fort Worth, Beard & Kultgen, and Pat Beard and Frank Beard, Waco, for appellants.

Bishop, Larimore, Lamsens & Brown, and Tom L. Larimore and James M. Brown, Jr., Fort Worth, for appellee.

## OPINION

MASSEY, Chief Justice.

Suit by parties in position of a plaintiff was for damages flowing from fraudulent inducement to contract, in which the earnest money advanced by plaintiff to defendant was retained by the latter upon failure and refusal of the plaintiff to consummate the contract. Plaintiff sought damages not only in the amount of the earnest money in the hands of the defendant, but also for expenses incurred in investigation and the reasonable attorney's fees incurred in prosecuting the suit.

Additionally, plaintiff sought recovery on a contract theory for rescission of contract. The court did not require that there be any election prior to time the charge was submitted. The jury failed to find for the plaintiff on the contract theory, while finding for it on the tort theory. On such theory it found in answer to certain of the special issues submitted, as follows: (4) defendant represented to plaintiff as a fact that it had no contract with a man or company termed "Mergner"; (5) such representation was relied upon by plaintiff as true; (6) plaintiff would not have entered into the agreement to purchase from defendant without such representation having been made; (7) such representation was false; though by another special issue (8) the jury refused to find for plaintiff that defendant, at the time the representation was made, knew of its falsity.

It appearing from the findings of the jury that plaintiff, if entitled to judgment on the verdict, should in any event be awarded the amount of the earnest money of $35,000.00 it had delivered to defendant plus interest from the date such delivery had been made, moved for entry of judgment on the verdict. (In this case we conclude that such $35,000.00 plus interest is the amount plaintiff should have been awarded as damages.) Defendant moved that the trial court disregard findings to special issues above listed as (4), (5), and (6), and that the court render a take-nothing judgment with no liability imposed.

In part the trial court sustained the motion of the defendant. The judgment stated that the answer of the jury to Special Issue No. 6 was disregarded, the necessary reason being that there was no evidence to support the finding that plaintiff would not have entered into the agreement to purchase from the defendant had the latter not made the representation that it had no contract with "Mergner". Accordingly, the judgment was rendered for defendant and that plaintiff take nothing by the suit. Therefrom plaintiff's appeal was brought to this court.

We reverse the judgment of the trial court, and render judgment for plaintiff and against the defendant as hereinafter set forth.

The plaintiff was or were ARTCO–BELL CORPORATION and HERBY'S FOODS,

INC. For convenience of the opinion these will be encompassed by the term plaintiff, as in the singular. The single defendant was THE TEXSTAR CORPORATION. A division of the defendant was Kreck Packing Company, which division or subsidiary had assets and liabilities, accounts payable and receivable, physical properties, etc.

On April 4, 1975 the parties, plaintiff and defendant, entered into a contract whereby plaintiff agreed to buy and defendant agreed to sell the business and properties of Kreck Packing Company on a "closing" date which, for our purposes, may be taken as on or before May 23, 1975. Consideration was agreed to be the price of $3,200,-000.00. Plaintiff agreed to assume and pay, perform and discharge all debts, obligations and liabilities of said company, whether accrued, absolute, contingent or otherwise, to the extent set forth on or adequately reserved against said company and reflected on its balance sheet as of September 30, 1974.

The contract signed on April 4, 1975 further provided for the payment or advancement of $35,000.00 in earnest money by plaintiff to defendant, to be applied upon the total contracted consideration. Contracted relative thereto by the parties was: "If the sale and purchase of the Assets is not consummated because of a breach or default on the part of Buyer, Texstar [the defendant] shall have the right to terminate this Agreement and to retain the Earnest Money as liquidated damages, it being agreed that such sum is fair and reasonable for such purpose." The plaintiff did pay the $35,000.00 earnest money to defendant on April 4, 1975.

Of material importance to our consideration is the identity of Fred C. Mergner and Fred C. Mergner & Associates, Inc., his company, and Mergner's relationship with the defendant. While there might be some doubt whether such relationship between the defendant and Mergner was of the material consequence attributed thereto by the plaintiff, nevertheless the plaintiff committed itself as having been fraudulently induced to contract because of the fact that, unrevealed, and indeed secreted from it at the very time it entered into the contract of April 4, 1975, defendant had a contract with Mergner; further, that if the fact had been revealed—and not by the defendant actually represented as non-existent—it would have refrained from making the April 4, 1975 contract. As heretofore noticed plaintiff's evidence did suffice to persuade the jury to find in accord with its contention save for the jury's refusal to find that defendant knew of the falsity of its representation at the time it was made.

■ It is our holding that there was evidence of probative force and effect which sufficed to entitle the jury to make the fact findings it did make. It follows that the trial court erred in rendering judgment for the defendant. It also follows that if the judgment had been rendered for plaintiff on the verdict, as we hold should have been done, the trial court would then have been empowered to entertain, if filed by the defendant, defendant's motion for new trial. Of course there was no need for the defendant to move for new trial since the judgment was rendered in accord with its own desire. It would be by cross-points of error on the appeal, necessary to be considered by the appellate court in the event it should hold that the trial court should have rendered judgment on the verdict and for the plaintiff, that the defendant would have need to attack the plaintiff's judgment. By construction, we will treat as existent for purposes of consideration of the defendant's cross-points a judgment for plaintiff rendered on the verdict.

In simplification: the discussion from this point treats the judgment under test on appeal as one rendered for plaintiff for damages resultant from its having been fraudulently induced to contract so that it was wrongfully deprived of its $35,000.00 advanced as earnest money.

Defendant's challenge, by cross-points of error, was of the answers returned by the

jury to certain special issues submitted, as follows: (4) defendant represented to plaintiff as a fact that it had no contract with a man or company termed "Mergner"; (5) such representation was relied upon by plaintiff as true; and (6) plaintiff would not have entered into the agreement to purchase from defendant without such representation having been made. To be remembered is that the same contention had been made by the defendant's motion to the trial court, sustained by that court as applied to (6), above, but not to (4) and (5).

Without necessity of discussion we state that we overrule defendant's contention that any of the findings listed lacked support by any evidence having probative force and effect. Therefore we move to a test of the evidence upon the defendant's contention of insufficient evidence or, more properly as applied to this case, defendant's contention that the findings, or some one or more of them, was so contrary to the greater weight and preponderance of the evidence as to clearly be erroneous. Should we agree with the defendant on any of the jury's answers, that a finding was contrary to the greater weight and preponderance of the evidence, our duty would be to remand the cause for a new trial. Should we not agree our duty would be to reverse the trial court and render a contrary judgment on the theory that we should render the correct judgment which the trial court should have initially rendered. It is the latter which we have concluded should be done.

In our test of the evidence for the purposes described in the preceding paragraph we take note of the fact, indisputably proved, that on October 1, 1974, and antecedent to the plaintiff's entry into contract with the defendant on April 4, 1975, defendant in effect stood in a contractual relationship with Mergner. Such relationship may be treated as having come into existence by letter from Mergner to the defendant, and accomplished by the defendant's signature of acknowledgment upon the same letter. In substance, the following is set forth in Mergner's letter:

"FRED C. MERGNER & ASSOCIATES, INC.

"October 1, 1974
"Mr. Leonard Hamzy, President
Kreck Packing, Company
4115 South Lamar Street
Dallas, Texas 75215
"Dear Leonard:

"It is the purpose of this letter to clarify our mutual agreement regarding the packaging, pricing, profit and sales of sandwiches to customers who have been, or might be, sold sandwiches thru my efforts.

"...

"Kreck Packing, Company will base their selling prices on . . .. In addition, eight cents (.08) per sandwich will be added to the selling price to be divided equally between Kreck Packing, Company and Fred C. Mergner and Associates, Inc.

"Profits will be divided when the customer has paid the invoice for the sandwiches.

"Prices will be firm for fourteen days (14 days). When the cost of ingredients is increased, or decreased, the variation in the cost of ingredients will be reflected accordingly in the selling price of the sandwiches.

"...

"Kreck Packing, Company will prepare the sandwiches for shipment within fourteen days (14 days) from the time that orders are placed by Fred C. Mergner and Associates, Inc., . . ..

"Kreck Packing, Company will not produce these sandwiches for customers other than those secured by Fred C. Mergner and Associates, Inc., . . ..

"...

"Fred C. Mergner and Associates, Inc. will divide any profits realized with Kreck Packing, Company as they are received.

"In the event that our mutual efforts produce a reasonable profit that will jus-

tify the necessary expenditure, Kreck Packing, Company will acquire the additional equipment required to package all sandwiches in like manner, for distribution to our customers.

"If the ideas expressed in this letter are in accord with the intentions developed in our conversations, please acknowledge in the space prepared for your signature. I remain,

"with best regards,

"/s/ Fred C. Mergner

"Fred C. Mergner, President.

"Acknowledged:

"/s/ Leonard Hamzy      Date 10–9–74

"Mr. Leonard Hamzy, President

"Kreck Packing, Company.

"  .   ."

Those agents of plaintiff for the purposes important to the instant case were three in number, namely Messrs. Jones, Ballew, and Hardegree. It is not necessary to separately detail the evidence of each. The evidence is sufficient to show that at all material times plaintiff felt animosity to or distrusted Mergner; that in the course of plaintiff's investigation at the Kreck Packing Company premises prior to entry into the contract on April 4, 1975, notice was brought to plaintiff through the observation by at least one of its agents that presence of Mergner was to be observed on such premises. This fact occasioned plaintiff's agent to make inquiry of an official for defendant whether Kreck Packing Company had any contract or agreement with Mergner. Plaintiff's agent received from such official the following information; in the agent's own words testified to as: "He says there were no agreement or no contracts. It was just a test program." Subsequently discovered by plaintiff was the existence of the letter agreement set forth, and that defendant was doing business with Mergner in accord therewith at time of the answer of the defendant's officer and agent that there was not a contract with Mergner.

There was a good deal of testimony in the representation that plaintiff would not have entered into the contract of April 4, 1975 had it known of such letter agreement. As already noticed the jury was thereby persuaded to find that this was a fact. The fact of its existence was not discovered until after the date of April 4, 1975 when plaintiff signed the contract to purchase and paid its earnest money of $35,000.00 to defendant.

Plaintiff's seizure upon the fact of misrepresentation of no contract with Mergner as reason why it was entitled to escape the obligations of the contract of April 4, 1975, or to obtain damages on the theory of fraudulently induced to enter into it, occurred at a time after it had signed such contract and paid its earnest money of $35,-000.00. Plaintiff was able to marshall many reasons why the above amounted to material fraudulent inducement to contract and these were presented during the trial. For example, the Mergner history of willingness to litigate contractual questions was shown, as well as reasons for plaintiff's avoidance of business relations with him because of an aversion and mistrust. Further, plaintiff contended that associated or subsidiary companies through which it conducted its business were already in competition with Mergner and presented evidence purporting to so show.

To counter such proof defendant protested that even as a contract the letter agreement could not have been binding for more than fourteen (14) days; that there was adequate time after plaintiff had raised the question and complaint of the agreement for defendant to have ended its relationship with Mergner so that delivery of that which was agreed to be sold to plaintiff could have been delivered free of any claim of Mergner, etc. Indeed defendant called Mergner as a witness and a part of his testimony was that according to his intention and understanding the contract of defendant with him was terminable upon notice of fourteen (14) days; and, further,

that in making the agreement it was not his understanding that the agreement would prevent defendant from packaging and distributing sandwiches of others, save and except for those which bore his label. Defendant proved that the amount of business done with Mergner was minimal compared to the total of its operations.

Our discussion and outline of the testimony could be extended, but we deem it sufficient to have raised the issue for the jury's determination sufficient to support the findings returned by the jury upon fraudulent inducement to contract. Furthermore, none of such jury findings were so contrary to the greater weight and preponderance of the evidence as to be clearly erroneous. For this court to make this holding means that insofar as the liability features of plaintiff's case are concerned it was entitled to judgment on the verdict returned by the jury.

■ We now reach the defendant's cross-points in which there is complaint, in number 8, that the trial court should not have submitted the special issue it did submit to the jury on attorney's fees for plaintiff and answered by the jury as $11,000.00; in number 7, that the trial court should not have submitted to the jury the special issue in answer to which the jury found, for plaintiff, that it had spent $10,000.00 investigating, examining, and evaluating the Kreck Packing Company contracted to be purchased—from the latter part of January, 1975, until the discovery of the existence of the Mergner contract; and in number 2, that judgment should be sustained for defendant because plaintiff failed to prove by any evidence any injury or damages as the result of any alleged misrepresentation in order to support a case for rescission. On this last mentioned cross-point we disregard the defendant's reference to rescission. We treat plaintiff as having received a judgment for damages of $35,000.00 by reason of its having been fraudulently induced to contract. Of course, plaintiff did not prove anything oth-

er than having "contracted to contract" and $35,000.00 was that with which it parted for that right. The measure of plaintiff's damages, at least to the extent of the $35,-000.00, would be the same in an action at law or in an equitable proceeding. We hold there was indisputable evidence on plaintiff's damages at law of $35,000.00.

We sustain defendant's complaints by cross-points 7 and 8, though to do so would occasion no more than our disregard of the jury findings of $10,000.00, as plaintiff's expenses, and $11,000.00 as plaintiff's attorney's fees. To do so aids our determination of the proper amount of the judgment which should be rendered for plaintiff.

■ It has long been the rule in this state that attorney's fees incurred by a party to litigation are not recoverable against the adversary unless provided by statute or contract except by way of punitive damages. *First Nat. Bank v. Slaton Independent School Dist.*, 58 S.W.2d 870, 876 (Tex.Civ.App.—Amarillo 1933, writ dism'd); *Mathis v. Wheery*, 45 S.W.2d 700, 702 (Tex.Civ.App.—Beaumont 1932, no writ). Furthermore, plaintiff had no prayer for recovery for attorney's fees except by way of punitive damages, and on the issues upon these the plaintiff failed to persuade the jury to find as was desired.

■ On the expenses incident to determination of whether to enter into the contract of April 4, 1975, and, after said date and until the date plaintiff discovered the existence of the defendant's contract with Mergner, plaintiff has failed to establish any fact which would entitle it to claim any right of recovery. Prior to decision made to contract on April 4, 1975 there would, of course, save under exceptional circumstances not shown to have been existent, have been no liability on the part of defendant to restore plaintiff to its condition as of the time it decided to make any expenditure to determine whether it should make an offer to purchase. After it had contracted on April 4, 1975 and prior to the discovery of

the fact that it had been fraudulently induced to contract, there might have been, but there was not, evidence of untoward segregable expenses incurred in good faith reliance in the anticipated consummation of that the ultimate contract up until the time of discovery of the existence of the Mergner contract. Conceivably, plaintiff might have incurred legally qualified damages which, if proved, would raise an issue upon entitlement by way of reimbursement in order to return it to its status quo, or position in which it was or should have been but for the wrongful act of defendant. Plaintiff has presented authorities which support such a legal proposition. From an examination of them is found that they generally allowed the reimbursement, as damages, out-of-pocket expenses proximately resulting, and reasonably foreseeable as necessary to be incurred by a wronged plaintiff at time of the wrong. However, in this case the evidence to which plaintiff has referred us as supportive of the jury's findings on expenses is insufficient to raise an issue to be submitted. In other words such evidence as there is to be examined is without probative force. Also, to be observed is that as the issue was submitted it permitted consideration of value of plaintiff's employees' time in investigating advisability of an offer to purchase before the date of the contract on April 4, 1975. Of course this fact is of no consequence to our determination of the material question, which is "no evidence". The plaintiff's employees would have entitlement to compensation from plaintiff as their employer whether connected with efforts in investigating the Kreck Company or performing other duties for it. Necessity of investigation after April 4, 1975, was not shown as having been made necessary on account of anything done or left undone by the defendant, nor was the necessity shown to have proximately resulted from the misconduct of the defendant. The wages of plaintiff's employees in that investigation would not qualify as out-of-pocket expenses even after the date on which the

contract was executed. There was no attempt to prove more; hence the jury finding is not merely faulty, but is one which is to be disregarded so that this court may render a judgment.

We hold the damages proved by plaintiff with support of the evidence to be the $35,-000.00, or in the identical amount of that which was delivered by it to defendant on April 4, 1975, plus legal interest thereon from such date, that the findings of the jury support recovery in such amount and that our duty is to render such a judgment in behalf of plaintiff.

Accordingly, judgment of the trial court is reversed and a contrary judgment rendered. It shall be the judgment of this court that plaintiffs, ARTCO–BELL CORPORATION and HERBY'S FOODS, INC., do have and recover of and from THE TEXSTAR CORPORATION, damages in the sum of $35,000.00, plus interest thereon at the rate of six per-cent (6%) per annum until date of the judgment of this court, and from such date interest on said $35,-000.00 at the rate of nine per-cent (9%) per annum until paid, plus all costs in the trial court and in this court, for which plaintiffs shall have execution.