**Jewell McGAHA, Individually and d/b/a, Jewell McGaha Real Estate, Appellant,**

v.

**Sammy DISHMAN, et ux, Appellees.**

**No. 1438.**

Court of Appeals of Texas,
Tyler.

Feb. 19, 1982.

Rehearing Denied March 11, 1982.

Frank L. Supercinski, Longview, for appellant.

Melvin Wilcox, Longview, for appellee.

SUMMERS, Chief Justice.

Mr. and Mrs. Sammy Dishman, plaintiffs and purchasers of real estate, sued real estate agent, Mrs. Jewell McGaha, to recover $4,000 which the Dishmans claim McGaha promised to give them when the sale on the subject property closed.

Trial was had to a jury which answered special issues in favor of the plaintiffs. Based on the jury's findings, the trial court entered judgment that the Dishmans recover $4,000 from McGaha for actual damages, plus interest. From this judgment McGaha appeals.

We reverse and remand.

Mr. and Mrs. Dishman first became interested in the property while the previous owners, the Andersons, were still living in the home. The Andersons had first signed an exclusive real estate listing agreement with Fugitt Realty Company. The original asking price on the home was $93,500. While Fugitt Realty still had the listing, the Dishmans made at least one offer to the Andersons to purchase the home. The offer was not accepted.

At about the time the Fugitt Realty listing agreement expired, Mrs. McGaha, representing her own realty company, came in contact with the Dishmans. Upon learning of their interest in the Anderson home, McGaha offered to negotiate a sale with the sellers. Through McGaha, the Dishmans made an offer on the home of $87,500. The Andersons rejected this offer and countered with an offer of $91,500.

At this point, the Dishmans' and McGaha's stories diverge. The Dishmans claim that they were unwilling to pay an additional $4,000 for the house; that McGaha offered to pay $4,000 (presumedly as a refund from her commission) to the Dishmans in order to bring the actual price down to $87,500; that McGaha, perhaps fearing there was a tinge of illegality involved in such a deal, signed a note which read:

August 28, 1977

I Jewell McGaha will pay to Sammy Dishman 4,000 for repair & labor on house at 1110 Richwood [the address of the Anderson home] when loan closes

/s/ Jewell McGaha

McGaha offers a different version. She claims that the Dishmans agreed to the Anderson's counter offer of $91,500; that the Dishmans wanted to enclose the garage and convert it into a game room; that they ask to borrow $4,000 from her in order to do the remodeling; that she signed the above-quoted note at the request of Mr. Dishman so that he could use the note at the lumber yard as a form of credit.

In any case, the $91,500 contract on the Anderson home was accepted by the Dishmans. A few days later, it became obvious to everyone that the Dishmans had first seen the Anderson home through Fugitt Realty, and, because of a protection clause in the Fugitt listing agreement, McGaha became liable to Fugitt for half the commission on the sale of the Anderson home. If McGaha had agreed to refund $4,000 of her commission to the Dishmans, as the Dishmans claim, that agreement suddenly became a losing proposition.

It is undisputed that McGaha never gave, refunded nor loaned the Dishmans $4,000, and this suit resulted. The case was tried on the theories of fraud in real estate transactions,[1] and violations of Art. 6573a (the Real Estate License Act).[2]

Findings were secured as to violations of § 15(4)(B)(N)(V) and (W) of the Real Estate License Act. Violations of those subsections of said Act would subject real estate brokers or salesmen to the suspension or revocation of their licenses by the Real Estate Commission. Those violations also can be used as a basis to recover from the real estate recovery fund as provided for in Section 8, Part 1 of the Real Estate License Act. However, in order to collect from the fund, one must be an aggrieved person who suffers monetary damages by reason of "certain acts" committed by a licensed broker or salesman. The referred to acts in § 8 are limited to an act that is either: (1) a violation of Section 15(3) or (4) of Art. 6573a; or (2) conduct which constitutes fraud, misrepresentation, deceit, false pretenses, or trickery.

Assuming, without deciding, that Sections 8 and 15 of the Real Estate License Act create a private cause of action against a real estate broker or salesman; and, assuming further that a broker or salesman violates Section 15(3) and/or (4) of the act, monetary damages must still be proven. It is elementary that for a plaintiff to recover damages from a defendant, the plaintiff must prove that the alleged wrongful conduct of the defendant caused the alleged damages. *Linder v. Citizens State Bank of Malakoff*, 528 S.W.2d 90, 94 (Tex.Civ.App. —Tyler 1975, writ ref'd n. r. e.) and cases cited therein.

█ In the case at bar, the jury found that McGaha had violated subsections (4)(B)(N)(V) and (W) of § 15 of Art. 6573a. However, special issues were not submitted asking whether or not the violations of these subsections caused any injury. With

---

1. Section 27.01, Texas Business and Commerce Code.

2. All statutory references are to Texas Revised Civil Statutes unless otherwise noted.

the record in such a state, we are unable to affirm the trial court's judgment in favor of the appellees on this theory.

However, we are not precluded from affirming the trial court's judgment if it can be upheld on the other applicable theory—violations of Section 27.01, Tex.Bus. & Com. Code, i.e., fraud in real estate transactions. The problem presented under that theory is one of conflicting jury answers to special issues.

Section 27.01 provides that fraud in a real estate transaction consists of a (1) false representation of a past or existing material fact, when the false representation is: (A) made to a person for the purpose of inducing that person to enter into a contract; and (B) relied on by that person in entering into that contract, *or* (2) false promise to do an act, when the false promise is: (A) material; (B) made with the intention of not fulfilling it; (C) made to a person for the purpose of inducing that person to enter into a contract; and (D) relied on by that person in entering into that contract.

In Special Issue No. 2, the jury found that McGaha made a false promise of a character likely to induce the Dishmans to enter into a contract to purchase the Anderson home. However, in Special Issue No. 13, the jury, when asked again, found the promise was *not* false.

To require a judgment entered on a verdict containing conflicting answers to be set aside, the conflict between the answers must be such that one answer would establish a cause of action (or defense), while the other answer would destroy it. *Little Rock Furniture Mfg. Co. v. Dunn,* 148 Tex. 197, 222 S.W.2d 985, 991 (1949).

It is our view that a finding that McGaha made a false promise and a further finding that the promise was not false are in fatal conflict. The falsity of a promise is a key element in an action for fraud. The mere failure to discharge a promise of something to be done in the future is not fraud. The promise must be a false promise; that is, one made with a present inten-

tion not to perform the same. *Acostical Screens in Color, Inc. v. T.C. Lordon Co.,* 524 S.W.2d 346, 349 (Tex.Civ.App.—Dallas 1975, writ ref'd n. r. e.).

Although other errors in the case have been assigned by appellant McGaha, we find it unnecessary to pass on them. The case was not fully developed at the trial level by either side. In the interest of justice, we reverse and remand this case to the district court for a new trial. *Morrow v. Shotwell,* 477 S.W.2d 538, 541 (Tex.1972); *City of Beaumont v. Fuentez,* 582 S.W.2d 221, 223 (Tex.Civ.App.—Beaumont 1979, no writ); Rule 434, Tex.R.Civ.P.

Reversed and remanded.