**James S. WOODYARD, Appellant,**

v.

**James L. HUNT, Appellee.**

**No. 01–85–0008–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

July 18, 1985.

In fact, only 1.43 acres was committed to the corporation. After discovering this fact, appellant became active in the corporation's activities and purchased more stock in the corporation, which ultimately declared bankruptcy. Appellant claims that the jury's finding of zero damages is in fatal conflict with its general finding that he was damaged and that this conflict requires either a new trial or rendition of judgment in his favor for $35,000.

Appellant brings two points of error, both regarding the apparent conflict between special issues no. 1(a) and 2(a). Special issue no. 1(a) stated:

> Do you find from a preponderance of the evidence that James L. Hunt committed actionable fraud in regard to any of the following?
>
> Answer "We do" or "We do not" as to each;
>
> a. James Woodyard's original investment on February 3, 1978, of $35,000;    WE DO

As a preface to special issue no. 1, the jury was instructed:

> The phrase "actionable fraud" as used in this charge means that James Hunt made a material representation that was false and when the representation was made, James Hunt knew it was false or made it recklessly without any knowledge of its truth and as a positive assertion and further that James Hunt made the representation with the intent that it should be acted upon by James Woodyard and that James Woodyard acted in reliance upon such representation *and James Woodyard thereby suffered damages.* (emphasis supplied)

Special issue no. 2(a) stated:

> What sum of money, if any, do you find from a preponderance of the evidence would reasonably compensate James Woodyard for damages, if any, suffered by James Woodyard as a result of such conduct, if you have so found?
>
> Answer in dollars and cents, if any.
>
> a. James Woodyard's original investment on Feb-

---

Thomas B. Greene, III, Crain, Caton, James & Womble, Houston, for appellant.

Karl C. Hoppess and James A. Gieseke, Hoppess, Cowgill & Emmott, P.C., Houston, for appellee.

Before COHEN, JACK SMITH and DUNN, JJ.

## OPINION

COHEN, Justice.

Appellant sued appellee for common law fraud and fraud under Tex.Bus. & Comm. Code sec. 27.01 (Vernon 1968). The jury affirmatively answered the special issue on fraud, but awarded zero dollars in damages. The trial court entered a judgment that appellant take nothing.

Appellant proved that in February of 1978, appellee induced him to pay $35,000 to purchase ⅙ of the shares of stock in a corporation, Champions South Development, Inc., by falsely representing that the corporation had or would soon acquire the right to purchase a certain 15.3 acre tract.

ruary 3, 1978, of $35,-000; —0—

Appellant argues that the court erred in overruling his motion for new trial and his motion for judgment non obstante veredicto, because of the allegedly fatal conflict of the issues. Neither motion is included in the record. Appellee contends that nothing is presented for review because of the absence of the motions from the appellate record.

A motion for new trial is not required where the complaint on appeal is conflicting jury issues. *See* Tex.R.Civ.P. 324. Furthermore, appellee does not contend that the motions for new trial and for judgment n.o.v. were not presented to and denied by the trial court. Under Tex.R. Civ.P. 419, we accept as true appellant's statements that the motions were presented to the trial court and overruled. *Whatley v. Whatley*, 493 S.W.2d 299, 301 (Tex. Civ.App.—Dallas 1973, no writ). Therefore, we will decide whether there is an irreconcilable conflict between the jury's answers to special issues no. 1(a) and 2(a).

The test for determining whether a conflict between special issues is irreconcilable is whether one answer would establish a cause of action while the other answer would destroy it. *McGaha v. Dishman*, 629 S.W.2d 220 (Tex.App.—Tyler 1982, writ ref'd n.r.e.). The "ultimate" question is whether the conflict is fatal to the entry of judgment. *Bay Petroleum Corp. v. Crumpler*, 372 S.W.2d 318, 319 (Tex.1963).

In issue no. 1(a), the jury found fraud that, according to the definition in the jury charge, includes damage to the victim. *See Hennigan v. Harris County*, 593 S.W.2d 380, 383 (Tex.Civ.App.—Waco 1979, writ ref'd n.r.e.). This finding would require judgment for the appellant. A finding to issue no. 2(a) that there were no damages would defeat the cause of action and, as it did here, result in a judgment for the appellee. This does not decide the matter, however, because the court is under a duty to reconcile conflicting jury findings if

at all possible. *Huber v. Ryan*, 627 S.W.2d 145 (Tex.1981). Courts presume that jurors do not intend to return conflicting answers, and will not reverse a judgment if there is any reasonable basis upon which the answers can be reconciled. *Id.*

The word "damages" has an ordinary meaning that encompasses every loss or diminution occasioned by the fault of another. *Magnolia Pipe Line Co. v. City of Tyler*, 348 S.W.2d 537 (Tex.Civ.App.— Texarkana 1961, writ ref'd). While the common definition may enable a jury to find that some general kind of damage has occurred, "damages" in a fraud case are measured by a particular standard. The proper measure of damages for fraud is the difference between the price paid and the value received, *Success Motivation Institute, Inc. v. Lawlis*, 503 S.W.2d 864, 867 (Tex.Civ.App.—Houston [1st Dist.] 1973, writ ref'd n.r.e.), or the difference between the value received and the value as represented. *Wright v. Carpenter*, 579 S.W.2d 575, 577 n. 1 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.). The jury in this case was given no instruction whatsoever concerning how to determine the amount of damages. Without such guidance, the jury could have determined that, while appellant suffered damage, the damage did not include economic loss.

We further observe that the evidence was insufficient to enable the jury to assess damages under the legal standard. Appellant asserts that $35,000, the amount of his initial investment, was the proper amount. However, there is no evidence in the record of the value of appellant's share in the corporation or the value as represented by the appellee. The evidence shows only that appellant invested $35,000 to buy stock in the corporation because he was told that the corporation had contracted to purchase 15 acres, and that his money would go towards the final purchase. He invested because the profit, after development and sale of lots to builders, "looked like it was going to run 1.2 million or a million and a quarter and a sixth of that

would have been $200 to $250,000 or so for the $35,000 we were putting in." None of these figures represents the value received or the value represented at the time of the fraud. Even if the jury had known the measure of damages, it could not have made a proper award because damages are measured by comparing values represented and received at the time of sale, not at some future time. *El Paso Development Co. v. Ravel,* 339 S.W.2d 360 (Tex.Civ.App. —El Paso 1960, writ ref'd n.r.e.); *McDonnell-Perkins Builders, Inc. v. Cranford,* 328 S.W.2d 800, 804 (Tex.Civ.App.—Fort Worth 1959, writ ref'd n.r.e.).

Appellant relies on *Artco-Bell Corp. v. Texstar Corp.,* 591 S.W.2d 945 (Tex.Civ. App.—Fort Worth 1979, writ ref'd n.r.e.) and *Smart v. United States Fidelity & Guaranty Co.,* 513 S.W.2d 291 (Tex.Civ. App.—Waco 1974, writ ref'd n.r.e.), both of which were cases where the fraud victim was awarded the amount of his initial payment as damages. In *Artco,* the fraud victim paid $35,000, an amount identical to appellant's initial investment, in order to purchase a business, and in *Smart* the fraud victim paid $5,600 for the construction of a cement foundation slab. Both cases are distinguishable because the victims received nothing of value in exchange for their money. In the instant case, appellant bargained for and received ⅙ of the shares in the corporation. This was tangible property which had some value in view of the undisputed evidence that the corporation owned an interest in certain real property. The jury may have concluded that appellant's decision to invest more money and time into the corporation, after discovering the fraud, and withholding suit for years thereafter, was some evidence that the corporation's stock had value.

Appellant relies on personal injury cases which were reversed on appeal, because the plaintiffs were awarded nothing, despite jury findings of negligence, causation, and injury. *See Lowery v. Berry,* 269 S.W.2d 795 (Tex.1954); *Cavitt v. Jetton's Greenway Plaza Cafeteria,* 563 S.W.2d 319 (Tex. Civ.App.—Houston [1st Dist.] 1978, no writ); *Nye v. W & L Co.,* 519 S.W.2d 142

(Tex.Civ.App.—Amarillo 1975, writ ref'd n.r.e.); *Dupree v. Blackmon,* 481 S.W.2d 216 (Tex.Civ.App.—Beaumont 1972, writ ref'd n.r.e.). None of these were fraud cases, involving a particular measure of damages, and in each case there was evidence to support a damage award based upon the correct legal standard.

■ When answers to special issues are in conflict, courts have held that the specific issue controls over the general issue. As one distinguished commentator has written, application of this apparently simple rule is not simple:

> These rules clearly give ample room for metaphysical exercise. Application of the formulas requires the court to fit to the facts of the individual verdict the generic concepts of "material" issues, specific findings which are not evidentiary, "ultimate" findings which are not "legal conclusions," and to determine whether the broader finding includes the more restricted. Naturally, the courts differ in closely analogous cases.... So long as the concepts of "ultimate," "evidentiary," "general," and "specific" special issues retain their present ambiguity, each case must be solved on its own peculiar circumstances.

3 R. McDonald, *Texas Civil Practice in District and County Courts* sec. 15.06.5 (rev. 1983).

Decisions applying the rule include *Sproles v. Rosen,* 126 Tex. 51, 84 S.W.2d 1001 (1935), in which the plaintiff won a judgment, despite a finding that he was negligent, because the jury found that he was not negligent on each of several specific allegations; *Ingles v. Cohen,* 543 S.W.2d 455 (Tex.Civ.App.—Waco 1976, writ ref'd n.r.e.) in which the court held for the defendant, who was acquitted of all specifically alleged acts of negligence, despite a finding that he caused 30% of the plaintiff's injuries; *Ruiz v. Flexonics,* 517 S.W.2d 853 (Tex.Civ.App.—Corpus Christi 1974, writ ref'd n.r.e.) where the court resolved in favor of the defendant a conflict between liability issues acquitting the de-

fendant of negligence with a damage issue which made a monetary award; and *Texas Imports v. Allday,* 649 S.W.2d 730 (Tex. App.—Tyler 1983, no writ), in which the court upheld a finding that ten head of cattle were delivered in unhealthy condition, even though the jury had also found that all the cattle in that shipment were delivered in healthy condition.

These cases furnish another basis for our decision in the present case. In special issue one, the jury simultaneously answered affirmatively many different questions, including (1) whether appellee made a material representation; (2) that was false; (3) that was known to be false when made or was made recklessly; (4) that was made as a positive assertion; (5) that was made with intent that appellant act upon it; (6) that appellant acted in reliance upon the representation; and (7) that appellant "thereby suffered damages." It is not surprising that when the jury was faced with the specific, limited inquiry in special issue two, directed solely to the amount of the damages, its answer was different than when answering seven questions at once regarding different topics.

The reason that courts give effect to a specific provision over a general one in a contract, statute, or special issue is that it is more likely that the specific result was understood and intended. This sound rule has been recognized by the legislature and made a part of the Code Construction Act. Tex.Rev.Civ.Stat.Ann. art. 5429b–2, sec. 3.06 (Vernon Supp.1985).

We hold that where a special issue was specifically designed to focus the jury's attention solely on the amount of damages, it should be given more weight on that subject than another special issue, which mentioned damages only briefly and generally in the course of a lengthy instruction on other subjects. Points of error one and two are overruled.

The judgment of the district court is affirmed.