**Opinion issued April 5, 2013**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-09-00728-CV

————————————

**PETER FAZIO, SHARI FAZIO, AND ERIC FAZIO, Appellants**

**V.**

**CYPRESS/GR HOUSTON I, L.P., CYPRESS/GR HOUSTON, INC., AND CYPRESS EQUITIES, INC., Appellees**

**\*\*\***

**CYPRESS/GR HOUSTON I, L.P., CYPRESS/GR HOUSTON, INC., AND CYPRESS EQUITIES, INC., Appellants**

**V.**

**PETER FAZIO, Appellee**

---

**On Appeal from the 129th District Court**

**DISSENTING OPINION ON EN BANC RECONSIDERATION**

This is an appeal from a judgment notwithstanding the verdict ("JNOV"). Appellants, Peter Fazio, Shari Fazio, and Eric Fazio (collectively, "Fazio") sued appellees, Cypress/GR Houston I, L.P., Cypress/GR Houston, Inc., and Cypress Equities, Inc. (collectively, "Cypress")[1] for fraud and fraudulent inducement relating to a purchase agreement (the "Purchase Agreement") for approximately nine acres of retail property with improvements consisting mainly of a Garden Ridge store (the "Property" or "the Garden Ridge store"). Fazio alleged that Cypress, as the seller, concealed material information about the financial condition of the Garden Ridge store that it was required to produce to Fazio, the buyer, prior to the sale under the terms of a letter of intent (the "Letter of Intent" or "LOI") signed by both parties. A jury found that Cypress's concealment of financial information in its possession that was material to the sale fraudulently induced Fazio to purchase the Garden Ridge store. It awarded actual and exemplary damages to restore Fazio to the position he had been in prior to his purchase of the Property and to punish Cypress for its wrongful acts.

---

[1] Cypress/GR Houston, Inc. is the general partner of Cypress/GR Houston I, L.P. According to Cypress, Cypress Equities, Inc., is a real estate advisory firm.

Cypress moved for JNOV, arguing that Fazio's fraud claims were barred by a contractual disclaimer of reliance in the Purchase Agreement in light of *Schlumberger Technology Corp. v. Swanson* and its progeny.[2] Cypress argued that, therefore, the jury's answer to Question No. 1(A), finding that Cypress committed fraud against Fazio, should be disregarded. It contended that it owed no duty to disclose information to Fazio and that the Letter of Intent could not create a duty as a matter of law. It further argued that, even if a duty of disclosure existed, the disclaimer of reliance clause in the Purchase Agreement negated the essential element of Fazio's reliance on Cypress's representations as a matter of law.

In addition, Cypress argued that the jury's damages finding in response to Question 2(1), awarding Fazio the difference between the price he paid for the Property and the price he sold it for, should be disregarded because, when the jury's answer to Question 1(A), finding fraud, is set aside, the answer to Question 2(1), finding damages for fraud, is rendered immaterial. Cypress also argued that the jury's answer that Cypress owed Fazio damages was immaterial because "Question No. 2(1) did not instruct the jury as to any recoverable measure of fraud damages under Texas law," and the question "erroneously instructed the jury as to an improper measure of damages because it asked the jury to measure the difference in the value of the Property between the date of purchase and the date of

---

[2]    *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171 (Tex. 1997).

3

sale, four years later," whereas Texas law requires that fraud damages be measured at the time of the alleged fraudulent transaction. In sum, Cypress argued that the jury's answer to Question 2(1) was immaterial and must be disregarded because the measure of damages given to the jury was improper. Finally, Cypress argued that the jury's answer to Question 2(1) was immaterial because the jury found under a second damages question, Question 2(2), "that Fazio suffered no damages under the legally proper measure of damages, which must be measured at the time of the challenged transaction."

The trial court entered JNOV in response to Cypress's motion and ordered that Fazio take nothing by his claims. The court also denied Cypress/GR Houston I's motion for attorney's fees. Fazio appeals the JNOV, and Cypress/GR Houston I also appeals, seeking its attorney's fees.

A panel of this Court reversed the trial court's JNOV. The panel majority concluded that Cypress was required by the terms of the Letter of Intent to produce all material information in its possession to Fazio prior to his purchase of the Property and that there was evidence to support the jury's finding in response to Question 1(A) that Cypress intentionally concealed material financial information, thus inducing Fazio to enter an agreement to purchase the Garden Ridge store that he would not have entered but for Cypress's misrepresentations and omissions. The panel majority further found that Fazio's fraud claims were not barred by the

4

disclaimer of reliance in the Purchase Agreement and that, in response to Question 2(1), the jury properly awarded Fazio restitution damages as measured by the difference between the amount he paid for the Property and the amount for which he was able to sell it. Cypress moved for rehearing and en banc reconsideration of the panel's August 16, 2012 opinion. This Court voted to reconsider the case en banc. The majority of the en banc Court now affirms the JNOV on the ground that the trial court properly entered a take-nothing judgment in Cypress's favor. I respectfully dissent.

As Cypress admitted in its motion for JNOV, in order to reach the issue of whether the jury's verdict on damages should be set aside, the trial court had to determine whether Fazio was entitled to damages at all based on Cypress's misrepresentations and concealment of information. The en banc majority, however, fails to address this issue. I cannot agree with its decision to affirm the JNOV on the measure of damages without first determining whether the JNOV should be reversed for overturning the jury's finding that Cypress was liable for fraud—a conclusion the en banc majority necessarily reached in order to reach the damages issue but omitted from its opinion.

The only proper actions for this reviewing Court are (1) to agree with Cypress and the trial judge that the disclaimer of reliance in the Purchase Agreement barred Fazio's fraud claims based on concealment of material

5

information prior to the closing date of the sale transaction and thus to affirm the JNOV or (2) to agree with the jury that Fazio's fraud claims were *not* barred but that there was no evidence under any measure that Fazio was harmed. Instead, the en banc majority determines that Fazio was awarded damages under an incorrect measure of damages. Because it concludes that the measure of damages submitted to the jury in Question 2(1) was incorrect, it should have remanded for entry of a proper amount of damages. This Court has no authority to overturn the damages award and to declare that Fazio take nothing so long as there is more than a scintilla of evidence to support Fazio's claim that Cypress concealed or misrepresented information material to Fazio's purchase of the Garden Ridge store that it was required to disclose and caused Fazio harm.

I would hold that Fazio's fraud claims based on Cypress's duty of disclosure prior to the sale were not barred as a matter of law by the disclaimer of reliance in the subsequently executed Purchase Agreement. Therefore, the trial court erred in granting JNOV on that ground, to the extent it did. I would further hold that there was more than a scintilla of evidence to support the jury's finding in response to Question 1(A) that Cypress defrauded Fazio by inducing him to execute the Purchase Agreement through the concealment and misrepresentation of material financial information. Finally, I would hold that the jury properly found, in response to Question 2(1), that Fazio was entitled to restitution damages for

6

Cypress's fraud. I would, therefore, render judgment reinstating the jury verdict awarding Fazio $3,961,524.60 in damages for the fraud.

## Propriety of JNOV

Cypress argued in its motion for JNOV, which the trial court granted, that questions on fraud should never have been submitted to the jury because (1) it did not withhold material information from Fazio that it had a duty to disclose and (2) Fazio's fraud claims were barred as a matter of law by the disclaimer of reliance clause in the Purchase Agreement, and, thus, there was no evidence to support the jury's verdict as a matter of law.

In his first issue, Fazio argues that the trial court erred in disregarding the jury's answers to Question 1, finding that Cypress Equities defrauded him. He contends that the evidence was sufficient to establish that Cypress, as seller of the Property, had a duty as a matter of law to disclose material information to him; Cypress failed to disclose information material to the purchase; he was unaware that the material information was omitted; Cypress knew he was unaware of that information; and Cypress's conduct caused him harm. In his second issue, Fazio argues that his fraudulent inducement claim was not negated by the disclaimer of reliance, merger clause, or "as is" clause contained in the Purchase Agreement. I address these issues together.

7

## A.    Standard of Review of JNOV

A trial court may disregard a jury finding and render JNOV if a directed verdict would have been proper, if the finding is immaterial, or if there is no evidence to support one or more of the jury findings on issues necessary to liability.  *See* TEX. R. CIV. P.  301; *Tiller v. McLure*, 121 S.W.3d 709, 713 (Tex. 2003); *Spencer v. Eagle Star Ins. Co.*, 876 S.W.2d 154, 157 (Tex. 1994); *Williams v. Briscoe*, 137 S.W.3d 120, 124 (Tex. App.—Houston [1st Dist.] 2004, no pet.). A question is immaterial, for the purpose of determining whether a court may disregard a jury finding, when the question should not have been submitted, when it was properly submitted but has been rendered immaterial by other findings, or if it called for a finding not within the jury's province, such as a question of law. *Spencer*, 876 S.W.2d at 157.

In reviewing a grant of JNOV, the reviewing court must determine whether there is any evidence upon which the jury could have made the finding.  *See id.* The reviewing court must view the evidence in the light most favorable to the verdict, crediting favorable evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not.  *See City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005); *Bradford v. Vento*, 48 S.W.3d 749, 754 (Tex. 2001); *see also Tiller*, 121 S.W.3d at 713 (holding that, in reviewing "no evidence" point, court views evidence in light that tends to support finding of disputed fact

and disregards all evidences and inferences to contrary). To sustain a challenge to the legal sufficiency of the evidence to support a jury finding, the reviewing court must find that: (1) there is a complete lack of evidence of a vital fact; (2) the court is barred by rules of evidence or law from giving weight to the only evidence offered to prove a vital fact; (3) there is no more than a mere scintilla of evidence to prove a vital fact; or (4) the evidence conclusively established the opposite of a vital fact. *Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 903 (Tex. 2004). If some evidence supports the disregarded finding, the reviewing court must reverse and render judgment on the verdict unless the appellee asserts cross-points showing grounds for a new trial. *See M.N. Dannenbaum, Inc. v. Brummerhop*, 840 S.W.2d 624, 628 (Tex. App.—Houston [14th Dist.] 1992, writ denied); *Basin Operating Co. v. Valley Steel Prods. Co.*, 620 S.W.2d 773, 776 (Tex. Civ. App.—Dallas 1981, writ ref'd n.r.e.).

In applying these standards, I would hold that the trial court improperly granted the JNOV.

## B. Propriety of the Trial Court's JNOV

In its JNOV, the trial court held that, as a matter of law, the disclaimer of reliance clause in the Purchase Agreement barred the jury from giving any weight to evidence supporting Fazio's fraudulent inducement claim.

### i. Propriety of JNOV overturning the jury's finding that Cypress defrauded Fazio

*(a) The elements of fraudulent inducement*

Fraudulent inducement is a particular species of fraud that arises only in the context of a contract and requires the existence of a contract as part of its proof. *Haase v. Glazner*, 62 S.W.3d 795, 797–98 (Tex. 2001); *Clark v. Power Mktg. Direct, Inc.*, 192 S.W.3d 796, 799 (Tex. App.—Houston [1st Dist.] 2006, no pet.). Thus, with a fraudulent inducement claim, the elements of fraud must be established as they relate to an agreement between the parties. *Haase,* 62 S.W.3d at 798–99.

A contract is subject to avoidance on the ground that it was induced by fraud. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 331 (Tex. 2011); *see also Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 46 (Tex. 1998) ("As a rule, a party is not bound by a contract procured by fraud."). Indeed, "the law long ago abandoned the position that a contract must be held sacred regardless of the fraud of one of the parties in procuring it." *Dallas Farm Mach. Co. v. Reaves*, 307 S.W.2d 233, 239 (Tex. 1957).

The elements of fraud are: (1) that the speaker made a material misrepresentation (2) that he knew was false when he made it or that he made recklessly as a positive assertion without any knowledge of its truth (3) with the

10

intent that the other party act upon it and (4) that the other party acted in reliance on the misrepresentation and (5) suffered injury thereby. *Italian Cowboy*, 341 S.W.3d at 337. Fraud may also occur when (1) a party conceals or fails to disclose a material fact within the knowledge of that party; (2) the party knows the other party is ignorant of the fact and does not have an equal opportunity to discover the truth; (3) the party intends to induce the other party to take some action by concealing or failing to disclose the fact; and (4) the other party suffers injury as a result of acting without knowledge of the undisclosed fact. *Bradford*, 48 S.W.3d at 754–55; *JSC Neftegas-Impex v. Citibank, N.A.*, 365 S.W.3d 387, 408 (Tex. App.— Houston [1st Dist.] 2011, pet. denied). A representation is material if "a reasonable person would attach importance to [it] and would be induced to act on the information in determining his choice of actions in the transaction in question." *Italian Cowboy*, 341 S.W.3d at 337.

In addition, fraud requires a showing of actual and justifiable reliance. *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 923 (Tex. 2010); *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001); *JSC Neftegas-Impex*, 365 S.W.3d at 397 n.3. In evaluating justification, the court considers whether, "given a fraud plaintiff's individual characteristics, abilities, and appreciation of facts and circumstances at or before the time of the alleged fraud[,] it is extremely unlikely that there is actual reliance on the

11

plaintiff's part." *Grant Thornton*, 314 S.W.3d at 923 (quoting *Haralson v. E.F. Hutton Grp., Inc.*, 919 F.2d 1014, 1026 (5th Cir. 1990)).

Generally, the failure to disclose information—which is alleged here—does not constitute fraud unless there is a duty to disclose the information. *Bradford*, 48 S.W.3d at 755; *see Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998); *JSC Neftegas-Impex*, 365 S.W.3d at 408–09 (holding that first element of fraud claim based on failure to disclose material fact within defendant's knowledge is triggered only if defendant has legal obligation to disclose fact). However, "a general duty to disclose information may arise in an arm's-length business transaction when a party makes a partial disclosure that, although true, conveys a false impression." *Bradford*, 48 S.W.3d at 755. Likewise, a common-law duty to speak applies in certain circumstances, i.e. "(1) one who voluntarily discloses information has a duty to disclose the whole truth; (2) one who makes a representation has a duty to disclose new information when he is aware that the new information makes the earlier representation misleading or untrue; and (3) one who makes a partial disclosure and conveys a false impression has a duty to correct it." *JSC Neftegas-Impex*, 365 S.W.3d at 409.

Silence may be equivalent to a false representation when the particular circumstances impose a duty on the party to speak and the party nevertheless deliberately remains silent. *Bradford*, 48 S.W.3d at 755; *SmithKline Beecham*

12

*Corp. v. Doe*, 903 S.W.2d 347, 353 (Tex. 1995). Thus, a seller of real estate has a duty to disclose material facts that would not be discoverable by the exercise of ordinary care and diligence on the part of a purchaser or which a reasonable investigation and inquiry would not uncover because "where there is a duty to speak, silence may be as misleading as a positive misrepresentation of existing facts." *Smith v. Nat'l Resort Cmtys., Inc.*, 585 S.W.2d 655, 658 (Tex. 1979).

Even in the absence of a duty to disclose, a purchaser is entitled to rescind the transaction if an undisclosed fact is basic and is one the seller knows the purchaser would regard as material. *Id.* (holding that careful reading by purchasers of twenty-eight page declaration of reservations received at time contract for sale of lot was executed would not have reasonably alerted them to possibility that inundation easement encumbered lot, and, therefore, purchasers were entitled to rescission). Whether a duty to disclose exists is a question of law. *Bradford*, 48 S.W.3d at 755.

*(b) Cypress's duty to disclose*

Fazio argues that Cypress had a duty to disclose and that the jury correctly found that it defrauded him by concealing economic information about the Garden Ridge store material to the purchase of the Property. Cypress argued in its motion for JNOV, and responds on appeal, that it had no duty to disclose to Fazio the economic information that was concealed. I would conclude that Cypress had both

13

a common law and a contractual duty to provide to Fazio the economic information concealed. Thus, Fazio's claims fall within the category of claims for which an action for fraudulent inducement lies.

This case is similar to *Italian Cowboy*. In that case, the Texas Supreme Court held that "commercial tenants are entitled to rely on the fact that a landlord will not actively conceal material information" regarding the condition of the property and misrepresent that information to one not in a position to discover the truth for himself. *See* 341 S.W.3d at 339. Italian Cowboy, which had leased a restaurant site, sued Prudential, the landlord, for withholding its knowledge of an odor problem at the proposed restaurant site and affirmatively stating that the site had no problems. *Id.* at 328, 338–39. The supreme court held that the Prudential agent's "one-sided knowledge of past facts" made her false representations that she had been working with the restaurant site since its inception, that "the building was in perfect condition, never a problem whatsoever," and that there was "nothing wrong with the place at all" actionable under the circumstances of the case. *Id.* at 328, 339. The court stated, "Firsthand knowledge—like [the landlord's]—concerning material information—like an odor problem in a restaurant site—is exactly the sort of scenario that demonstrates the sound policy behind the exception allowing an opinion to be actionable under certain circumstances where material information was withheld." *Id.* at 339; *see also Bradford*, 48 S.W.3d at

14

754–55 (holding that fraud may occur when party conceals or fails to disclose material fact within its knowledge of which it knows other party is ignorant, while knowing other party does not have equal opportunity to discover truth and intending to induce that party to take some action by concealing or failing to disclose fact, and other party suffers injury as result of acting without knowledge of undisclosed fact).

Here, the LOI expressly provided, "Seller will provide Buyer with all information in [its] possession including, but not limited to the following" listed documents. The LOI became binding under its terms when the Purchase Agreement was signed on September 19, 2003. Cypress knew from the express representation in the LOI that Fazio had based his offer of $7,667,000 for the Property in the LOI on Cypress's "currently reported absolute net income of $805,040." It further knew that this income was generated by rental income received from Garden Ridge. Cypress also knew that Fazio was seeking all documents in its possession material to the purchase of the Property and that it had promised to provide them, and it knew that Garden Ridge was restructuring its leasehold obligations, that Garden Ridge "need[ed] to reduce [its] occupancy costs at [Cypress's] premises," that one of the leaseholds Garden Ridge intended to restructure was the Garden Ridge store on the Property Fazio was investigating, and that Keen, Garden Ridge's restructuring consultation firm, and Cypress had

15

discussed at least three times a 30% annual rent reduction for the Garden Ridge store in the total amount of $241,512. Finally, Cypress knew that its own lender had demanded the personal guaranty from its president of the outstanding $5,704,000 loan secured by the Property.

In accordance with the due diligence provision in the LOI, Fazio, an experienced real estate investor, and his agents conducted due diligence before Fazio signed the Purchase Agreement, including requesting and reviewing all financial information about the Property in Cypress's possession. When Fazio discovered disturbing information about Garden Ridge in the financial statements provided to him, he conducted further investigations with both Garden Ridge and Cypress. He was repeatedly assured that all was well and that Garden Ridge anticipated strong sales, and, for that reason, Garden Ridge had taken out a large inventory loan from Bank of America to finance the Christmas season.

There is undisputed evidence in the record that Fazio's agent asked Cypress for all information and "every scrap of paper" that Cypress had regarding the Property and that Cypress knowingly suppressed (1) the March 5, 2003 letter from Keen to Cypress's President, Maguire, stating that Garden Ridge was "restructuring" and would "need to reduce our occupancy costs at your premises"; (2) two letters from Keen regarding specific properties, including the Property at issue here; (3) Keen's repeated communications with Cypress's Director of

16

Finance seeking a 30% rent reduction on the Property; and (4) Cypress's lender's August 14, 2003 demand that Maguire execute a personal guaranty of the $5,704,000 loan secured by the Property. Cypress possessed all of this information before it executed the LOI containing Fazio's offer to pay Cypress $7,667,000, which was expressly "[b]ased on the currently reported absolute net income of $805,040." A reasonable person in Fazio's position would have attached importance to these facts. And such an investor would have wanted to know that four days after the September 19, 2003 execution of the Purchase Agreement for the Property, Maguire signed the guaranty requested by Guaranty Bank, knowing that it would be extinguished by the sale of the Property to Fazio, which closed on October 31, 2003.

I would hold that Cypress had a duty under the terms of the LOI to disclose all information in its possession material to Fazio's purchase of the Property prior to the execution of the Purchase Agreement. I would further hold that Cypress's superior knowledge of past facts regarding the financial stability of Garden Ridge which it actively concealed, knowing that Fazio was unaware of those facts and did not have an equal opportunity to discover the truth and intending to induce him to purchase the Property, made Cypress's suppression of information about Garden Ridge's restructuring, its negotiations with Garden Ridge's representatives over rent reduction, and the personal guaranty required of Maguire by the lender for the

17

Property actionable under the circumstances. *See Italian Cowboy*, 341 S.W.3d at 338; *Bradford*, 48 S.W.3d at 754–55. Thus, I would hold that Cypress's active concealment of this material information, which it was under both a contractual and a common-law duty to disclose, was fraudulent as a matter of law. *See Italian Cowboy*, 341 S.W.3d at 338–39.

The question thus arises whether Fazio's reliance on the completeness of Cypress's disclosures about the financial condition of the Garden Ridge Store was justified, given the disclaimer of reliance in the Purchase Agreement he signed.

*(c) Fazio's alleged waiver of reliance*

In his second issue, Fazio argues that his fraudulent inducement claim was not waived by the disclaimer of reliance, or by the merger and "as is" clauses, in the Purchase Agreement. Cypress argued successfully in its motion for JNOV, and argues on appeal, that it was.

First, and most importantly, Cypress's failure to disclose occurred during the due diligence period subject to the LOI—*not* after the execution and effective date of the Purchase Agreement. The disclaimer of reliance in a Purchase Agreement induced by fraud cannot apply retroactively to remove a pre-existing duty to disclose information material to entry into the contract. Once fraud is proved, a fraudulently induced contract is void. *See Italian Cowboy*, 341 S.W.3d at 331 (holding that contract is subject to avoidance on ground that it was induced by

18

fraud). The law is well-established that a disclaimer of reliance does not waive fraud in the inducement to contract. *Id.* The contract with the reliance provision is voided by the proof of fraud. Even a written contract containing a merger clause can be avoided for fraud in the inducement, and the parol evidence rule will not stand in the way of proof of such fraud. *Id.*

A party to a contract may contractually waive reliance on disclosures through a disclaimer or merger clause. *See Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 178–79, 181 (Tex. 1997). The question of whether an adequate disclaimer of reliance exists so as to negate a claim of fraudulent inducement is a question of law. *Italian Cowboy*, 341 S.W.3d at 333.

In *Forest Oil Corp. v. McAllen*, the Texas Supreme Court clarified the factors for the court to consider in determining whether, under the circumstances in this case, a disclaimer of reliance bars a fraudulent inducement claim:

> (1) the terms of the contract were negotiated, rather than boilerplate, and during negotiations the parties specifically discussed the issue which has become the topic of the subsequent dispute; (2) the complaining party was represented by counsel; (3) the parties dealt with each other in an arm's length transaction; (4) the parties were knowledgeable in business matters; and (5) the release language was clear.

268 S.W.3d 51, 60 (Tex. 2008) (holding that waiver-of-reliance provision precluded fraudulent inducement claim with respect to arbitration clause in release). Thus, in this case, the disclaimer of reliance would have to "clearly and

19

unequivocally" relieve Cypress of any duty to disclose material financial information material to the value of the Property with the Garden Ridge store on it during the disclosure period in order to bar Fazio's fraudulent inducement claim. This it did not do.

To determine whether the language of the disclaimer "clearly and unequivocally" disclaimed Fazio's reliance on Cypress's disclosures and failures to disclose, we apply the ordinary principles of contract construction. *See Italian Cowboy*, 341 S.W.3d at 332. "In construing a contract, a court must ascertain the true intentions of the parties as expressed in the writing itself." *Id*. at 333. To determine intent, "we must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *Id.* (quoting *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003)); *see Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). We begin with the contract's express language. *Italian Cowboy*, 341 S.W.3d at 333. In construing a contract, we give terms their "plain and ordinary meaning unless the [contract] indicates the parties intended a different meaning." *Dynegy Midstream Servs., Ltd. P'ship v. Apache Corp*., 294 S.W.3d 164, 168 (Tex. 2009); *see U.S. Denro Steels, Inc. v. Lieck*, 342 S.W.3d 677, 682 (Tex. App.—Houston [14th Dist.] 2011, pet. denied). "If the written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not

20

ambiguous and the court will construe the contract as a matter of law." *Italian Cowboy*, 341 S.W.3d at 333 (quoting *Coker*, 650 S.W.2d at 393); *see John Wood Grp. USA, Inc. v. ICO, Inc.*, 26 S.W.3d 12, 16 (Tex. App.—Houston [1st Dist.] 2000, pet. denied). Only when a contract is ambiguous may a court consider the parties' interpretation and admit extraneous evidence to determine its true meaning. *Italian Cowboy*, 341 S.W.3d at 333–34.

"The intent of the parties to be bound is an essential element of an enforceable agreement and is often a question of fact," but where the "intent is clear and unambiguous on the face of the agreement, it may be determined as a matter of law." *John Wood Grp.*, 26 S.W.3d at 16. Courts determine whether a contract is ambiguous by examining it as a whole in light of the circumstances present when it was executed by the parties. *Sun Oil Co. v. Madeley*, 626 S.W.2d 726, 731 (Tex. 1981); *U.S. Denro Steels*, 342 S.W.3d at 683. Courts also bear in mind the particular business activity to be served and, when it is possible and proper to do so, avoid a construction that is unreasonable and inequitable. *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 530 (Tex. 1987); *U.S. Denro Steels*, 342 S.W.3d at 682.

Article V of the Purchase Agreement specified Cypress's duty to provide to Fazio during the first ten days of the designated due diligence period certain defined Documents having to do with the condition of the Property; and it set out

the parameters of that duty, including its disclaimer of responsibility for the accuracy and completeness of the defined Documents, all of which dealt with the condition of the Property, not with the economics of the purchase transaction.

Section 5.2 of the Purchase Agreement, titled "Document Review," which set out the only disclaimer in the body of the Purchase Agreement, was restricted by its own terms to a disclaimer of reliance on "the truth, accuracy, or completeness of the Documents" and, "[e]xcept with respect to any express warranties made in this Agreement," to a disclaimer of reliance and waiver of liability for "representations or warranties, express or implied, statements of fact, and other matters contained in the Documents." The "Documents" to which the disclaimer referred were expressly defined in the Purchase Agreement as "(i) copies of the Lease and all amendments thereto; (ii) the Survey; (iii) copies of any Plans; (iv) to the extent allowed by the author, copies of all existing soil, engineering, architectural, and environmental reports covering the Property in Seller's possession; (v) copies of all Service Contracts, if any; and (vi) copies of all Permits."

The defined Documents to which the disclaimer expressly applied did not include the financial documents in Cypress's possession that it knew to be material to the sale. Thus, that language cannot form the basis for concluding that the

22

disclaimer of reliance in the Purchase Agreement clearly and unequivocally waived Cypress's duty to disclose.

There are only two remaining bases potentially supporting waiver of reliance. The first occurs in the sentence following the statement in the disclaimer that "Seller has not made and does not make any warranty or representation regarding the truth, accuracy, or completeness of the Documents or the source(s) thereof":

> Except with respect to any express warranties made in this Agreement, Seller expressly disclaims and Purchaser waives any and all liability for representations and warranties, express or implied, statements of fact, and other matters contained in the Documents, or for any omissions from the Documents, or in any other written or oral communication transmitted or made available to Purchaser.

The second is a similarly general statement at the end of the paragraph:

> Except with respect to any express warranties made in this Agreement, Purchaser shall rely solely upon its own investigation with respect to the Property, including, without limitation, the Property's physical, environmental, or economic condition, compliance or lack or compliance with any ordinance, order, permit, or regulation or any other attribute or matter relating thereto.

It is clear from the plain language of these provisions that the disclaimer of reliance clearly and unequivocally expressed Fazio's intent to rely on his own and his agents' inspections of the "Real Property" and to waive reliance on the accuracy and completeness of the defined Documents regarding the condition of the Real Property. However, it is unreasonable as a matter of law to read the two

23

boiler-plate, general statements in the disclaimer in Article V, dealing with property inspections, as clearly and unequivocally waiving Fazio's right to rely on Cypress's fulfillment of its common law and contractual duty to disclose all material financial information about the Garden Ridge store. Under the principle of *ejusdem generis*, "[W]hen words of a general nature are used in connection with the designation of particular objects or classes of persons or things, the meaning of the general words will be restricted to the particular designation." *State v. Fid. & Deposit Co. of Md.*, 223 S.W.3d 309, 312 (Tex. 2007) (per curiam); *Hilco Elec. Coop. v. Midlothian Butane Gas Co.*, 111 S.W.3d 75, 81 (Tex. 2003). Likewise, under the principle of *expressio unius est exclusio alterius*, or "the expression of one is the exclusion of the other," "it is a settled rule that the express mention or enumeration of one person, thing, consequence or class is equivalent to an express exclusion of all others." *Johnson v. Second Injury Fund*, 688 S.W.2d 107, 108–09 (Tex. 1985) (quoting *State v. Mauritz-Wells Co.*, 175 S.W.2d 238, 241 (Tex. 1943)).

The disclaimer of reliance in the section of the Purchase Agreement entitled "Document Review" can only reasonably be read as being limited to omissions and communications with respect to the lease, the survey, copies of any plans, existing soil, engineering, architectural, and environmental reports, service contracts, and permits in Cypress's possession. Likewise, in this context, the general statement—

24

that "[e]xcept with respect to any express warranties made in this Agreement" Fazio was relying "solely upon [his] own investigation with respect to the Property, including, without limitation, the Property's physical, environmental, or economic condition, compliance or lack of compliance with any ordinance, order, permit, or regulation or any other attribute or matter relating thereto"—clearly refers to Fazio's agreement to rely on his own investigation of the condition of the real property and does not express his intention to waive reliance on the truthfulness and completeness of Cypress's disclosures of economic information about Garden Ridge.

The disclaimer clearly does not unequivocally express Fazio's intention to waive either Cypress's duty of disclosure of all information in its possession under the terms of the LOI or Cypress's common law duty to disclose fully and truthfully, and not to actively and misleadingly conceal, material financial information about the Property in its possession which it knew Fazio did not know of and did not have an equal opportunity to discover. *See Italian Cowboy*, 341 S.W.3d at 339 ("[C]ommercial tenants are entitled to rely on the fact that a landlord will not actively conceal material information."); *Bradford*, 48 S.W.3d at 754–55; *see also Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd.*, 896 S.W.2d 156, 162 (Tex. 1995) (holding that buyer is not bound by agreement to purchase

something "as is" that he is induced to make by fraudulent representation or concealment of information by seller).

Similarly, the standard boiler-plate "as is" clause in the Purchase Agreement is expressly limited by its terms to Fazio's agreement "to accept the property 'as is,' 'where is,' and 'with all faults', subject to any physical or environmental condition which may exist, and without the existence of and reliance on any representation or warranty by Seller." This "as is" clause, by its own terms, is limited to the physical or environmental condition of the Property. It does not, under any reasonable construction, waive reliance on Cypress's duty under the LOI to disclose the complete financial condition of the Garden Ridge store. *See Italian Cowboy*, 341 S.W.3d at 340–41; *Schlumberger*, 959 S.W.2d at 181; *Jefferson Assocs.*, 896 S.W.2d at 162.

Nor can the standard boiler-plate merger clause in the Purchase Agreement be reasonably interpreted as waiving Fazio's fraudulent inducement claim. *See Italian Cowboy*, 341 S.W.3d at 334 (holding that when parties have merely recited "the provisions of a standard merger clause," they have not shown intent to include disclaimer of reliance on representations) (citing 11 SAMUEL WILLISTON & RICHARD A. LORD, A TREATISE ON THE LAW OF CONTRACTS § 33.21 (4th ed. 1999) ("Recitations to the effect that a written contract is integrated, that all conditions, promises, or representations are contained in the writing . . . are commonly known

26

as merger or integration clauses.")).  This is particularly the case where the LOI expressly stated that its terms became "binding on both parties" only upon execution of the formal Purchase Agreement.

I would hold that neither the disclaimer of reliance, nor the "as is" clause, nor the merger clause in the Purchase Agreement contains "clear and unequivocal language expressly disclaiming reliance on representations, and representing reliance on one's own judgment" that waived Fazio's fraudulent inducement claim, which was based on Cypress's concealment of economic information in its possession material to the purchase of the Garden Ridge store that it was required by the express terms of the LOI to produce to Fazio.

Because there was no clear and unequivocal disclaimer of reliance as required by *Schlumberger* and *Forest Oil*, I do not find it necessary to review the circumstances surrounding the formation of the parties' agreement under the remaining *Forest Oil* factors.  *See Forest Oil*, 268 S.W.3d at 60 (holding disclaimer of reliance was to be negotiated, rather than boilerplate and release language was clear); *Schlumberger*, 959 S.W.2d at 179 (holding that clear and unequivocal language is necessary to bar fraudulent inducement claim); *see also Italian Cowboy*, 341 S.W.3d at 337 n.8 (holding that only where there is clear and unequivocal disclaimer of reliance must analysis "proceed to 'the circumstances

27

surrounding [the contract's] formation,' in order to determine whether such a provision is binding on the parties involved").

I would sustain Fazio's first and second issues and hold that the trial court erred in entering JNOV disregarding the jury's answer to Question 1(A) on Fazio's fraudulent inducement claim. Therefore, the JNOV must be reversed.

### ii. *Propriety of JNOV solely on issue of damages*

The en banc majority skips the jury's answer to Question 1(A), finding that Cypress defrauded Fazio, and it affirms the JNOV solely on the issue of damages. It concludes that the jury's answer to Question 2(1)—finding restitution damages due to Fazio for the fraud found in response to Question 1(A)—is immaterial and must be disregarded. I turn, therefore, to whether the en banc majority correctly affirmed the trial court's JNOV on the basis of the jury's answer to Question No. 2(1).

The trial court could disregard the jury's finding under Question 2(1) only if a directed verdict would have been proper, if the finding is immaterial, or if there is no evidence to support the finding. *See* TEX. R. CIV. P. 301; *Tiller v. McLure*, 121 S.W.3d 709, 713 (Tex. 2003). A directed verdict is proper under limited circumstances: (1) when the evidence conclusively establishes the right of the movant to judgment or negates the right of the opponent; or (2) when the evidence

is insufficient to raise a material fact issue. *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000).

Here, the jury's finding, in response to Question 1(A), that Cypress Equities fraudulently induced Fazio to purchase the Property, necessarily included a finding that Fazio had borne his burden of establishing all of the elements of Cypress's fraud, including his injury by the fraud. *See Italian Cowboy*, 341 S.W.3d at 337 (providing that injury to plaintiff is element of fraud). The jury further found, in response to Question 5, that there was clear and convincing evidence that the harm to Fazio resulted from Cypress's fraud; and, in Question 6, it awarded Fazio exemplary damages based on its finding of fraud.

By concluding that the JNOV was proper, the en banc majority necessarily has to have concluded that Cypress's misrepresentations and concealment of information caused no harm to Fazio as a matter of law. There was undisputed evidence that Fazio was unable to recover approximately $3.9 million of his original $7.6 million investment in the Property. In order for this injury to be immaterial, as required to support the JNOV, the en banc majority must show that, as a matter of law, this loss on his original, fraudulently-induced investment was not a compensable injury under *any* proper measure of damages.

Although Cypress argues that Question 2(1), measuring restitution damages, should not have been submitted to the jury and that only Question 2(2), measuring

29

benefit-of-the-bargain damages, is a proper measure of damages for fraud, its argument is more properly construed as an argument that Question 2(1) was a defective instruction, not as an argument that the damages finding was immaterial. The jury's findings on other questions support a conclusion that it found that Fazio was damaged by Cypress's fraud. Whether he succeeded or not, Fazio attempted in Question 2(1) to submit a proper question on a key element of his case, damages. Assuming, then, that Question 2(1) was an erroneous instruction—a point that I do not concede—the remedy under the supreme court authority cited by the en banc majority would be to order a new trial, not to grant JNOV. *See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 817 (Tex. 1997) ("Because the charge failed to instruct the jury on the proper measure of direct damages, the submission was reversible error. But, because we find some evidence that Arthur Andersen's misrepresentation was a producing cause of PECO's loss, we remand this case for a new trial."); *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 44 (Tex. 2007) ("[I]f the plaintiff submits a jury question on his claim that is merely 'defective,' as opposed to 'immaterial,' the appropriate remedy is to remand for a new trial rather than to render judgment."); *Spencer v. Eagle Star Ins. Co. of Am.*, 876 S.W.2d 154, 157 (Tex. 1994) (holding that remand is proper when defective liability question is submitted).

Thus, I would hold that the trial court erred to the extent it granted JNOV on the issue of damages, and the en banc majority errs in affirming the JNOV solely on that ground. If the en banc majority were correct in holding that the trial court submitted an incorrect measure of damages to the jury in Question 2(1), it should overturn the JNOV and remand the case for a new trial. But, for the reasons stated below, I do not agree with the en banc majority that the measure of damages set out in Question 2(1) was incorrect. I believe that Question 2(1) properly instructed the jury on restitution damages, which is a proper measure of damages for fraudulent inducement.

## Damages

The jury found, in response to Question 2(1), that $3,961,524.60 represented the difference between the price Fazio paid for the Property and the amount he received when he eventually sold the Property. In his third issue, Fazio contends that the trial court erred in disregarding the jury's answer to Question 2(1) on the ground that the evidence was legally and factually insufficient to show that he suffered damages as measured by the difference between the value of the Property at the time it was purchased and the amount he paid for it on that day, as required by Texas law. Fazio contends that restitution damages are a proper measure of damages for fraud under Texas law and that, because he would not have entered the transaction but for Cypress's fraud, the jury properly awarded him restitution

31

damages that restored to him all of the money he paid for the Property, subtracting the value at which he sold the Property, and, thus, restored him to his position prior to the fraud.

Cypress argues (and the en banc majority agrees) that the only correct measures of damages were the expectancy, or benefit-of-the-bargain, measure or rescission as measured in the *absence* of fraud—a measure designed to restore *both* parties to the position they were in prior to the sale of the Property. Cypress points out that, in its objection at trial, it argued that Question 2(1) was not "legally recognized as a measure of damages for fraud to the extent that it attempts to instruct the jury on the benefit of the bargain measure or the out-of-pocket measure" because it "improperly measures the value received in the future and not at the time the property was transferred or the transaction was consummated." Cypress further argues that "there is no evidence to support any difference in the value of the property at the time the purchase agreement was executed and the price that Mr. Fazio paid for it. The only evidence of value at the time the purchase agreement was executed confirms that plaintiffs suffered no damages." Cypress, citing *Arthur Andersen*, argues that Fazio "ignores the black-letter principle that a fraud claim requires a showing of damages, and those damages must be assessed at the time the Property was purchased."

32

However, Cypress's argument conflates apples and oranges. Question 2(1) did *not* attempt to instruct the jury on benefit-of-the-bargain or out-of-pocket damages, as Cypress contends; Question 2(2) did that. Question 2(1) instructed the jury on *restitution* damages. Nevertheless, the en banc majority agrees with Cypress, and it concludes that the trial court properly entered a take-nothing judgment against Fazio because Question 2(1) did not properly instruct the jury on benefit-of-the-bargain damages, which is not, in fact, a contested issue. It also concludes that Fazio was not entitled to recover rescission damages, which are a type of restitution damages, under Question 2(1) because rescission is not an appropriate remedy in this case (which is incorrect, as shown below) and because Question 2(1) did not ask the jury to determine Fazio's fraud-induced losses.

Damages for fraud in the sale of real estate typically conform to one of two measures of damages: an "out-of-pocket" measure or a "benefit of the bargain" measure. *See, e.g.*, *Formosa Plastics*, 960 S.W.2d at 49; *W.O. Bankston Nissan, Inc. v. Walters*, 754 S.W.2d 127, 128 (Tex. 1988); *see also Quigley v. Bennett*, 227 S.W.3d 51, 56 (Tex. 2007) (Brister, J., concurring and dissenting) ("[F]raud cases uniformly list only two damage measures: expectancy and reliance."). "The 'benefit of the bargain' measure, which utilizes an expectancy theory, evaluates the difference between the value as represented and the value actually received." *Henry S. Miller Co. v. Bynum*, 836 S.W.2d 160, 163 (Tex. 1992); *see Formosa*

*Plastics*, 960 S.W.2d at 49. "Out-of-pocket damages measure the difference between the value the buyer has paid and the value of what he has received." *Arthur Andersen*, 945 S.W.2d at 817; *Formosa Plastics*, 960 S.W.2d at 49. The en banc majority in this case assumes that benefit-of-the-bargain and out-of-pocket expectancy are the *only* types of damages available for fraud, and it assumes that, because the jury found no out-of-pocket damages in response to Question 2(2), that it could not have properly found restitution damages in response to Question 2(1).

However, Texas courts have also held under general principles of common-law fraud that one who is induced by fraud to enter into a contract may elect an equitable remedy of restitution or rescission that would restore him to the position he would have been in had he not been the victim of fraud. *See Italian Cowboy*, 341 S.W.3d at 346 ("When rescission of a lease is appropriate for breach of the implied warranty of suitability, a tenant is entitled to be restored to the position it would have been in had it not leased the premises that turned out to contain a latent defect rendering the premises commercially unsuitable."); *see also Quigley*, 227 S.W.3d at 56–57 (Brister, J., concurring and dissenting) (discussing restitution damages in context of fraud and stating that "restitution can be recovered in fraud cases" but it "is generally not listed, perhaps because it is an equitable rather than a legal remedy, or because it is available even without a showing of fraud"); *Henry S. Miller Co.*, 836 S.W.2d at 162–63 (holding, in DTPA case, that evidence

34

supported award of damages in total amount of plaintiff's capital investment in lease venture for beauty shop, minus amount plaintiff received back from venture, including money received when plaintiff sold beauty shop business, as part of plaintiff's "actual loss" even though plaintiff did not present evidence to support "out-of-pocket" or "benefit-of-the-bargain" measure of damages); RESTATEMENT (FIRST) OF RESTITUTION § 152 (1937) ("Where a person is entitled to restitution from another because the other has obtained his services, or services to which he is entitled, by fraud, duress or undue influence, the measure of recovery for the benefit received by the other is the market value of such services irrespective of their benefit to the recipient.") (quoted in *Quigley*, 227 S.W.3d at 56 n.8 (Brister, J., concurring and dissenting)).

"'[R]estitution' . . . means the act of restoring or a condition of being restored." *Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 825 (Tex. 2012). Restitution is generally defined as an equitable remedy under which a person is restored to his or her original position before the loss or injury. *In re J.R.*, 907 S.W.2d 107, 109 (Tex. App.—Austin 1995, no writ). Restitution "involves restoring property or money taken from the plaintiff," and, "[u]nlike other contractual damages, restitution focuses on forcing the defendant to disgorge benefits that it would be unjust to keep, rather than on compensating the plaintiff." *City of Harker Heights v. Sun Meadows Land, Ltd.*, 830 S.W.2d 313, 317 (Tex.

App.—Austin 1992, no writ). "'[R]escission is one of the principal asset-based remedies in restitution,' and it 'restore[s] the parties to the status quo ante by unwinding the contractual exchange instead of pressing it forward.'" *Cruz*, 364 S.W.3d at 825 (quoting RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 37, cmt. a). "Rescission is a form of restitution that applies if the transaction may still be unwound; if it cannot, a plaintiff may sue for damages." *Id.*

This Court explained the availability of restitution or rescission damages in fraud cases in *Nelson v. Najm*, stating:

> In addition to these alternative measures of damages, [the out-of-pocket measure and the benefit-of-the-bargain measure], Texas courts have long held under general principles of common-law fraud that one who is induced by fraud to enter into a contract has a choice of remedies: he may either recover the monetary damages flowing from the fraud or he may elect the equitable remedy of rescission in lieu of damages and demand a return of any amount paid. This election of remedies recognizes that, depending on the circumstances, a defrauded party may not be made whole by a recovery of actual damages, but instead may need an equitable remedy such as rescission. *Id*.

127 S.W.3d 170, 176 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (internal citations omitted). Recently, the supreme court has reaffirmed that "[r]escission is an equitable remedy and, as a general rule, the measure of damage is the return of the consideration paid, together with such further special damage or expense as

36

may have been reasonably incurred by the party wronged on account of the contract." *Italian Cowboy*, 341 S.W.3d at 345.

Here, the jury was given two instructions regarding damages. The first, in Question 2(1), sought a finding on restitution or equitable damages; and the second, in Question 2(2), sought a finding on benefit-of-the-bargain or expectancy damages. Question 2(1) asked the jury to calculate the difference between the total amount Fazio invested in the Property—the amount he paid for the Property under the belief that the Garden Ridge would continue to make payments of $805,040.00—and the amount he received back when he sold the Property. The jury found, in response to Question 2(1), that "[t]he difference between the price the Fazios paid for the Property and the amount they received when they sold the Property" was approximately $3.9 million. In other words, the amount of money it took to restore to Fazio the consideration he paid for the Property, which the jury found he would not have paid to Cypress but for the fraud, was $3.9 million. The measure of damages in Question 2(1) conformed to a restitution theory of damages under which Fazio was entitled to be put back into the position he occupied before the fraud. *See Cruz*, 364 S.W.3d at 825; *Italian Cowboy*, 341 S.W.3d at 346; *Quigley*, 227 S.W.3d at 56–57 (Brister, J., concurring and dissenting). This was a proper calculation to arrive at the amount of money that would return to Fazio the

consideration he paid upon entering the fraudulently-induced agreement. *See Italian Cowboy*, 341 S.W.3d at 345–46; *Nelson*, 127 S.W.3d at 176.

The jury also found, in response to Question 2(2), that "[t]he difference, if any, between the price the Fazios paid for the Property and the value of the Property at the time the Purchase Agreement was executed" was $0. Question 2(2) conformed to an out-of-pocket or reliance measure of damages—the difference between the value Fazio, as the buyer, paid and the value of the Property he received. *See Arthur Andersen*, 945 S.W.2d at 817. Thus, in finding no damages under Question 2(2), the jury found only that Fazio had not proved his entitlement to out-of-pocket or reliance damages. This finding was irrelevant to a restitution finding. Fazio was not limited to seeking the damages that flowed from the difference between the value of the Property at the time of the sale (when the Property had a valuable lease on it) and the consideration paid by Fazio for the Property with a lease on it. Fazio was also entitled to seek an equitable remedy that would put him back in the position he was in before he was induced by Cypress's fraud to buy the Property with a valuable lease that Cypress knew was about to evaporate—information material to the sale which it fraudulently concealed from Fazio.

Fazio testified that he sought out investments that fit a particular profile, i.e., single tenant/triple-net properties in which the tenant pays rent, taxes, common

38

area maintenance fees, and insurance. Fazio offered to pay Cypress $7,667,000 for the Property based on Cypress's report at the time of sale of "absolute net income of $805,040.00" and his investigation into the financial soundness of the Property and tenant. The jury determined that Cypress Equities fraudulently withheld material information indicating that the lease would not be renewed, and, in fact, Fazio received rent payments for only two months before Garden Ridge declared bankruptcy and quit paying rent. Fazio testified that he would not have entered into the contract at all had he known the information that Cypress withheld, namely that the $805,040 lease would not be renewed because the Garden Ridge store was about to declare bankruptcy.

Thus, there was more than a scintilla of evidence to support the jury's conclusion that Fazio's injury from Cypress's fraud did not arise from the difference between the amount he paid (for the real property plus a purportedly valuable lease) and the value of the property he received (real property with a still-valid $805,040 lease) on the day he received it. Rather, his injury was caused by his entering into the contract at all—an action he would not have taken but for Cypress's fraud in concealing from him the fact that the lease was about to evaporate, taking a substantial amount of the value of the Property with it. These circumstances justify a finding that Fazio's injury, at the time of the sale, was properly measured by the total amount he paid as consideration that he would not

have paid to Cypress but for the fraud and that he was entitled to be restored to the position he was in before he was fraudulently induced to contract with Cypress for the purchase of the Property. And, indeed, the jury found the evidence that Fazio was fraudulently induced to buy the Property sufficiently clear and convincing to award exemplary damages. In other words, the jury properly measured Fazio's injury under the equitable restitution or rescission standard. *See Italian Cowboy*, 341 S.W.3d at 346 (allowing tenant to be restored to position it would have been in had it not leased premises that turned out to contain latent defect rendering premises commercially unsuitable); *Henry S. Miller Co.*, 836 S.W.2d at 162–63 (awarding damages in total amount of plaintiff's capital investment in lease venture for beauty shop, minus amount plaintiff received back from venture, as part of plaintiff's "actual loss" even though plaintiff did not present evidence to support "out-of-pocket" or "benefit-of-the-bargain" measure of damages); *see also Quigley*, 227 S.W.3d at 56–57 (Brister, J., concurring and dissenting) (discussing restitution damages in context of fraud).

The majority concludes that Question 2(1), measuring restitution damages, "does not measure damages that were foreseeable and directly traceable to the misrepresentation." Slip Op. at 11. But this conclusion is simply incorrect. In finding that Fazio was fraudulently induced to enter into the contract with Cypress, the jury necessarily found that Cypress withheld material information regarding the

40

impending bankruptcy of the Garden Ridge store on the Property with the intent that Fazio purchase the Property at a price justified for a property with a valuable lease on it, but not otherwise, and that Fazio did rely on Cypress's misrepresentations and concealments and invested over $7.6 million in the purchase of the Property, which he would not have purchased had he known the concealed information. This is fraud justifying restitution damages. *See Italian Cowboy*, 341 S.W.3d at 337 (listing elements of claim for fraud and finding rescission appropriate remedy for fraudulent inducement); *Bradford*, 48 S.W.3d at 754–55 (providing that fraud may occur when party conceals or fails to disclose material fact within its knowledge of that party with intent to induce another party to take some action and that other party suffers injury as result of acting without knowledge of undisclosed fact). Thus, I would hold that Fazio's damages in the form of the amount he paid for the Property were a direct and foreseeable consequence of Cypress's action in inducing Fazio into a contract by withholding material information and that the jury's response to Question 2(1), finding the difference between the amount Fazio paid for the Property and the amount of the investment he was able to recover upon the sale of the Property, was a proper measure of damages for the fraud.

I also disagree with the en banc majority that the cases it cites support its argument. In reaching its conclusion that Question 2(1) was an improper measure

of damages and Question 2(2) was the exclusive proper measure, the majority relies on *Arthur Andersen, Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369 (Tex. 1984), and *Woodyard v. Hunt*, 695 S.W.2d 730 (Tex. App.—Houston [1st Dist.] 1985, no writ). However, these cases are distinguishable from the present case because they do not address the issue of the equitable remedy of restitution or rescission in the context of fraud.

The en banc majority also states that restitution or rescission is not an appropriate remedy here. It argues that, "[a]s the jury found that Fazio received property equal to what he paid for it, and that the fraud was not a proximate cause of damages under a proper measure, rescission is not an appropriate remedy." Slip Op. at 13. The problem is that the jury *did* find that the fraud was a proximate cause of Fazio's damages, and it made that finding under a proper measure of restitution or rescission damages. In stating that "rescission is not an appropriate remedy" in this case, the majority misconstrues the supreme court's opinion in *Cruz* as holding that rescission "requires a mutual restoration and accounting, in which each party restores property received from the other." Slip Op. at 12 (citing *Cruz*, 364 S.W.3d at 823–24, 826). This is sometimes, but not always, the case; and it is not the case here.

In *Cruz*, Andrews Restoration brought a breach of contract action against Cruz, the homeowner, relating to repairs it did on Cruz's home for which it was

never paid. 364 S.W.3d at 820–21. Cruz counterclaimed for fraud, fraudulent inducement, negligent misrepresentation, and violations of the DTPA. *Id.* The trial court held, as a matter of law, that Andrews Restoration's failure to include language required by the Texas Property Code in its contract with Cruz was a false, misleading, or deceptive act that was a producing cause of injury to Cruz. *Id.* at 821. The jury *also* found, however, that Cruz had breached his agreement with Andrews Restoration and that the company's damages were $705,548.02, the amount of its unpaid invoices. *Id.* Thus, there was fault on both sides. The jury further found, in response to the trial court's instruction that it had already concluded Andrews Restoration had violated the DTPA, that Cruz was entitled to $0 in damages. *Id.* In spite of this finding of $0 in damages, Cruz argued that he was entitled to the amounts that the trial court found had been paid—both by himself and by his insurance company—under his agreement with Andrews Restoration. *Id.* at 823.

The supreme court determined that Cruz was not entitled to the remedy under the DTPA allowing a trial court to "restore illegally acquired money or property" because "[t]he statute's clear language provides a cause of action only to consumers who have sustained damages, and the jury awarded Cruz none." *Id.* The supreme court further held that, even if Cruz had prevailed on his DTPA claim, he was not entitled to an order restoring all amounts paid under the contracts

without deducting the value received under those agreements. *Id.* at 824. It observed that "Cruz seeks to rescind the agreements—he asks for all the money paid by him or on his behalf under the agreements—without surrendering the benefits he received." *Id.* at 825. In this context, the court stated that "rescission is not a one-way street. It requires a mutual restoration and accounting, in which each party restores property received from the other." This is a clearly correct statement of the law when there is wrong-doing on both sides. However, the court then went on to state:

> Generally, rescission is an equitable remedy, and Cruz correctly asserts that fault is relevant. A defendant's wrongdoing may factor into whether he should bear an uncompensated loss in those cases in which it is impossible for a claimant to restore the defendant to the status quo ante. But it does not excuse the claimant in such cases from counter-restitution when feasible—as it would be here.

*Id.* at 826 (internal citations omitted).

Here, unlike in *Cruz*, the jury found that Cypress Equities had fraudulently induced Fazio into purchasing the Property. The result of its fraudulent inducement was that Cypress received $7,667,000 that Fazio paid for a property that he would not have bought had he not been defrauded. Fazio did not seek a windfall by seeking the return of all $7,667,000 back from Cypress. Instead, he sold the Property at fair market value for a property of its size without a valuable lease on it; he sought to recover from Cypress only the difference between that amount and the amount necessary to restore him to the position he was in before

44

Cypress fraudulently induced him to invest $7,667,000 in the Property; and the jury awarded him that difference in response to Question 2(1).  Thus, this is a case in which Cypress's wrongdoing factors into whether it should bear an uncompensated loss for the $3.9 million that Fazio was not able to recover through subsequent resale of the Property.  *See id.*; *see also Bynum*, 836 S.W.2d at 162–63; *City of Harker Heights*, 830 S.W.2d at 317 (holding that restitution "involves restoring property or money taken from the plaintiff" and that, "[u]nlike other contractual damages, restitution focuses on forcing the defendant to disgorge benefits that it would be unjust to keep, rather than on compensating the plaintiff").  The circumstance regarding the transaction between Cypress and Fazio indicates that counter-restitution is not only unfeasible, unlike the situation in *Cruz*, but it would be unjust in light of Cypress's fraudulent conduct.

I would hold that Question 2(1) sought damages for Cypress's fraud under a proper measure and there was more than a scintilla of evidence to support the jury's finding.  Therefore, the trial court erred in granting JNOV on this issue.  *See Tiller*, 121 S.W.3d at 713.  And, the en banc majority errs in affirming the JNOV on this ground.

I would sustain Fazio's third issue.

45

## Remaining Issues

### A.    Apportionment of Liability

In his fourth issue, Fazio argues that the evidence was sufficient to show that Cypress Equities, Inc., Cypress/GR Houston I, L.P. and Cypress/GR Houston, Inc. operated as a single business enterprise and that Cypress Equities was the agent for the seller and was 100% responsible for the harm to Fazio, as found by the jury in response to Questions 3 and 4; therefore, the trial court erred in disregarding the jury's answers to these questions and in granting JNOV and a take-nothing judgment.

Here, the jury charge in Question 1—regarding fraud—and Question 4—regarding piercing the corporate veil—included both prongs of the proof of liability of one business entity for the debts of another under an alter ego theory. The evidence showed that the LOI was negotiated by, "agreed and accepted" by, and signed by Cypress Equities as seller of the Property. The Purchase Agreement was executed by Cypress/GR Houston I, L.P. as seller. The evidence further showed that Cypress Equities was solely responsible for developing and marketing the Property. Cypress Equities' President, Maguire, made the decision to sell the Property; its employees, including Maguire and Claro, communicated with potential buyers and their agents, including Fazio's agents, Silver and Banks; Cypress Equities negotiated and executed the LOI and obtained a confidentiality

46

agreement regarding disclosure of Garden Ridge's financial information; it conducted discussions with Garden Ridge regarding its financial condition; it negotiated the sales price of the Property; it closed the transaction; its employee, Claro, was Cypress's principal contact person for the sale to Fazio; and one of its employees was primarily responsible for handling the sale. The Property's owner, Cypress/GR Houston I, L.P., was a single-purpose entity created to own the property. It had no employees and no assets.

I would hold that the evidence was sufficient to support the jury's finding, in response to Question 4, that the Cypress entities, including Cypress Equities and Cypress/GR Houston I, L.P., constituted a single business enterprise and that Cypress/GR Houston I, L.P. and Cypress Equities were alter egos of each other. *See SSP Partners v. Gladstrong Invs. (USA) Corp.*, 275 S.W.3d 444, 452, 455 (Tex. 2008) (holding "single business enterprise" theory "applies whenever two corporations coordinate operations and combine resources in pursuit of the same business purpose" and "[d]isregarding the corporate structure involves two considerations": (1) "the relationship between [the] two entities" and (2) "whether the entities' use of limited liability was illegitimate"); *Castleberry v. Branscum*, 721 S.W.2d 270, 271–72 (Tex. 1986) (holding that corporate veil may be pierced and one entity held liable for debts of another when, among other circumstances,

47

"a corporation is organized and operated as a mere tool or business conduit of another").

Under the circumstances of this case, I would further conclude that the evidence was sufficient to support the jury's response to Question 3, finding that Cypress Equities was 100% liable for the harm to Fazio and that the other Cypress entities, Cypress/GR Houston I, L.P. and Cypress/GR Houston, Inc., Joe Fazio, and Fazio's agents Silver and Banks, had no responsibility for causing the harm.

Therefore, I would hold that the trial court erred in disregarding the jury's answers to Questions 3 and 4 and in granting JNOV on the issue of Cypress Equities' 100% responsibility for the harm the fraud caused Fazio.

I would sustain Fazio's fourth issue.

## B. Exemplary Damages

In his fifth issue, Fazio argues that there was clear and convincing evidence that the harm to him resulted from Cypress's fraud, justifying the imposition of exemplary damages, and that the amount of exemplary damages awarded to him was within statutory and constitutional limits. Cypress responds that exemplary damages are not available where liability is precluded as a matter of law and that Fazio's fraud claim fails as a matter of law. It cites *Wright v. Gifford-Hill & Co.*, 725 S.W.2d 712 (Tex. 1987). Cypress also argues that there is no clear and convincing evidence of fraud.

48

In Question 5, the jury was asked whether it found from clear and convincing evidence that the harm to Fazio resulted from fraud. It was given the same instruction on fraud as in Question 1 and was instructed that "'[c]lear and convincing evidence' means the measure or degree of proof that produces a firm belief or conviction of the truth of the allegations sought to be established." It answered, "yes." In Question 6, the jury was instructed that "'exemplary damages' means an amount that you may in your discretion award as a penalty or by way of punishment," and it was instructed on the factors to be considered: the nature of the wrong, the character of the conduct involved, the degree of culpability of Cypress Equities, the situation and sensibilities of the parties, the extent to which Cypress Equities' conduct offended a public sense of justice and propriety, and the net worth of Cypress Equities. In response to Question 6, asking it to award a sum of money as exemplary damages, the jury answered, "$667,000.00."

Exemplary damages may be awarded for fraud only if the claimant's evidence of fraud is clear and convincing. TEX. CIV. PRAC. & REM. CODE ANN. § 41.003 (Vernon Supp. 2011). Clear and convincing evidence is "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 41.001(2) (Vernon 2008). The finder of fact must consider the nature of the wrong, the character of the conduct involved, the degree of culpability of the defendant, the situation and sensibilities

49

of the parties involved, the extent to which the defendant's conduct offended a public sense of justice and propriety, and the net worth of the defendant. *Id.* § 41.011(a) (Vernon 2008). Exemplary damages awarded against a defendant may not exceed an amount equal to the greater of either (1) two times the amount of economic damages plus an amount equal to any noneconomic damages found by the jury, not to exceed $750,000, or (2) $200,000. *Id.* § 41.008 (Vernon Supp. 2011).

Here, the exemplary damages awarded—$667,000—were not greater than two times the amount of economic damages found—$3,961,524.60—and did not exceed $750,000. Therefore, the award did not violate statutory and constitutional constraints. *See id.* Moreover, the evidence recited above is sufficient to support the jury's finding that the evidence of fraud was clear and convincing and that the nature of the wrong, the degree of Cypress's culpability, the situations and sensibilities of the parties, the extent to which Cypress's conduct offended a public sense of justice and propriety, and Cypress's net worth justified the imposition of the $667,000 in exemplary damages awarded to Fazio. *See id.* § 41.011. Therefore, I would hold that the trial court erred in granting JNOV on the issue of exemplary damages.

I would sustain Fazio's fifth issue.

## Conclusion

I would reverse the trial court's rendition of judgment notwithstanding the verdict and remand the cause to the trial court to render judgment on the verdict in favor of the Fazios for the reasons set out in this opinion.


                                        Evelyn V. Keyes
                                        Justice

Justice Bland, joined by Chief Justice Radack, and by Justices Massengale, Brown, and Huddle, for the en banc court.

Justice Massengale, concurring.

Justice Keyes, joined by Justices Jennings, Higley, and Sharp, dissenting.

Justice Jennings, joined by Justices Keyes, Higley, and Sharp, dissenting from the granting of en banc reconsideration.